[No. 8073.    Department Two.    August 27, 1909.]

*In the Matter of the Disbarment of* JAMES HOPKINS.[1]

ATTORNEY AND CLIENT—DISBARMENT—GROUNDS—ACTS INVOLVING MORAL TURPITUDE—FALSE CERTIFICATES OF NOTARY. An attorney is guilty of an act of moral turpitude, within Bal. Code, § 4775, authorizing his disbarment, where, acting as a notary public, he at divers times falsely certified, in his jurat and certificate to affidavits to be used in claims for pensions, that the witnesses appeared before him and were sworn and acknowledged the execution of the papers.

SAME—DECREE OF DISBARMENT—DISCRETION—APPEAL—REVIEW. A decree of permanent disbarment of an attorney will not be disturbed on appeal because of its severity, where from all the evidence it cannot be said that the court abused its discretion.

Appeal from a judgment of the superior court for Spokane county, Huneke and Kennan, JJ., entered December 3,

[1]Reported in 103 Pac. 805.

1908, disbarring the defendant from practicing law, after a trial before the court on the merits. Affirmed.

*Lucius G. Nash,* for appellant.

*Frank T. Post, Cyrus Happy,* and *Robert L. McWilliams,* for respondents.

PARKER, J.—This is an appeal by James Hopkins from a judgment of the superior court for Spokane county, permanently disbarring him from practicing as an attorney in the courts of this state. Among other charges made against him, is the following:

"Come now the undersigned, practicing attorneys-at-law of the state of Washington and members of the Spokane bar, duly appointed by the above entitled court to investigate the charges heretofore made against James Hopkins, an attorney of the Spokane, Washington, bar, and charge the said James Hopkins with unprofessional conduct, the commission of misdemeanors involving moral turpitude and the violation of the oath taken by him as such attorney-at-law, and more particularly set forth as follows, to wit: (1) That at divers times during the years of 1903 and 1904, the said James Hopkins, acting as a notary public in and for the state of Washington, did in his jurat and certificate to certain affidavits and declarations to be used, and used in claims for pensions, knowingly certify that the affiants and certifying witnesses named in such affidavits and declarations each personally appeared before him and was sworn thereto and acknowledged the execution thereof, when in truth such affiants and such identifying witnesses, or any of them, did not at the time alleged, nor at any time, appear before him, the said James Hopkins, and that such parties were not then nor at any time sworn by him and did not acknowledge the execution of such affidavits or declarations. That the said James Hopkins was in the Federal court for the eastern district of Washington, tried, convicted and sentenced for the commission of said acts."

A demurrer was interposed by appellant to this first charge, which was by the court overruled; when he answered and the cause proceeded to trial upon the merits be-

fore the court, Judges William A. Huneke and Henry L. Kennan presiding, at the conclusion of which the court made findings and conclusions against appellant substantially as charged, and entered judgment thereon as above indicated.

We will first dispose of the contention made upon this first charge which, as we view the case, will determine the legal correctness of the disposition of the cause by the learned trial court, leaving out of consideration for the present the discretion exercised by the court in permanently disbarring appellant rather than suspending him for a definite limited period. It is contended by learned counsel for appellant that the evidence does not warrant the findings of the court upon the first charge. We conclude, however, after a careful review of the admissions in the answer and the evidence given upon the trial, that the facts charged by that part of the complaint above quoted, and so found by the court, are fully sustained. The question presented upon the exception to the court's ruling upon the demurrer and to the exception to the court's conclusions of law, so far as the first charge is concerned, are the same, so we will consider them together, the contention of counsel being that the acts charged, and in substance found by the court against appellant, and upon which he was convicted in the Federal court, do not involve moral turpitude within the meaning of § 4775 of Bal. Code (P. C. § 3197), which provides:

"An attorney and counselor may be removed or suspended by any court of record of the state, for either of the following causes, arising after his admission to practice:—(1) His conviction of a felony or misdemeanor involving moral turpitude, in which case the record of conviction shall be conclusive evidence; . . ."

These acts upon which the conviction of appellant was had in the Federal court constitute a grave offense against the pension laws of the United States, punishable by a fine not exceeding $500, or by imprisonment for a term of not more than five years. U. S. Rev. Stats. § 4746. The grav-

ity of the offense is thus indicated, though it may be con-
ceded this does not determine the question of its involving
moral turpitude. That question, after all, must be deter-
mined from the inherent immoral nature of the act, rather
than from the degree of punishment which the statute law im-
poses therefor, though the latter may be some indication of
the public conscience relating thereto. Bouvier, in his Law
Dictionary, says: "Everything done contrary to justice,
honesty, modesty, or good morals is said to be done with
turpitude;" while Anderson's Dictionary of the Law defines
turpitude as, "Doing a thing against good morals, honesty,
or justice; unlawful conduct; infamy." The supreme court
of Pennsylvania, in the case of *Beck v. Stitzel*, 21 Pa. St.
522, 524, refers to moral turpitude in this language:

"This element of moral turpitude is necessarily adaptive;
for it is itself defined by the state of public morals, and
thus far fits the action to be at all times accommodated to the
common sense of the community."

See, also, *Ex parte Mason*, 29 Ore. 18, 43 Pac. 651, 54 Am.
St. 772; *In re Coffey*, 123 Cal. 522, 56 Pac. 448; *In re
Kirby*, 10 S. D. 322, 39 L. R. A. 856; Newell, Slander
& Libel, 98.

Now, do the acts found against the appellant, and for
which he was convicted in the Federal court, violate the com-
monly accepted standard of good morals, honesty, and jus-
tice? Suppose we measure his conduct in this regard, not
by any puritanical standard, but by the standard of right
conduct generally prevailing among our people, uninfluenced
by the fact that the statute law also punishes such conduct
as a crime. What, then, is the answer to the question
whether or not such acts involve moral turpitude? It seems
to us that there can be but one answer, and that is against
the contention of the learned counsel for appellant. Cer-
tainly a false statement, made with full knowledge of its fal-
sity, concerning a matter of serious moment, the purpose
of which is to influence those in authority in determining

their official acts, involves a question of morals, whether such statement be made under the sanctity of an oath to speak the truth or under the sanctity of official obligation to speak the truth. This presents a question of right conduct from a purely moral standpoint, independent of the fact that the law prescribes a punishment for the making of such false statements. "Thou shalt not bear false witness," was not only one of the ten commandments of the Mosaic law, but finds sanction in the teachings of Jesus as a standard of right under the new dispensation. Indeed, this standard of right seems to be a part of the moral consciousness of the race, and to be recognized by all peoples with any appreciation of moral ideals.

We have considered the first charge and the court's findings thereon so far without regard to the degree of appellant's guilt, or as to whether or not the learned trial court exceeded its discretion in permanently disbarring him, and only for the purpose of determining the question of moral turpitude involved in the offense for which he was convicted in the Federal court. From these considerations we conclude that the appellant was convicted of a crime involving moral turpitude; and therefore the judgment of the trial court finds ample support under § 4775 above quoted.

It might be that, if the judgment of the learned trial court rested entirely upon the first charge and the findings made thereon, it would seem rather severe in permanently disbarring appellant, in view of some of the mitigating circumstances shown. This, however, presents a question of discretion only, similar to the rendering of a judgment or sentence upon a conviction by a jury, of which the learned judges of the trial court, who saw and heard the witnesses testify, including the defendant, are in much better position to judge than is this court. There were other charges, and a great deal of evidence heard by the court relating thereto. We have read all of this evidence, as well as that pertaining to the first charge, more for the purpose of as-

certaining whether or not the trial court exceeded a sound judicial discretion than for the purpose of determining the legal sufficiency of such evidence to support such other charges standing alone. We deem it unnecessary to review the contentions made upon these additional charges, since we conclude that the facts shown in support of the first charge are sufficient in law to sustain the judgment; and in view of the whole evidence, we cannot say that the judgment of the trial court goes beyond the bounds of reasonable discretion in permanently disbarring the appellant.

We have examined questions upon the rejection of certain evidence offered by counsel for appellant, and find no error therein. They are not such that we feel called upon to review them here. The judgment of the trial court is affirmed.

RUDKIN, C. J., DUNBAR, MOUNT, and CROW, JJ., concur.