[No. 09653-8. En Banc.]
Argued January 17, 2003. Decided June 12, 2003.

*In the Matter of the Disciplinary Proceeding Against* Thomas J. Brothers, *an Attorney at Law.*

576

*Leland G. Ripley*, for appellant.
*Randy Von Beitel*, for the Bar Association.

OWENS, J. — The Washington State Bar Association (WSBA) hearing officer and the majority of the Disciplinary Board (Board) recommended that attorney Thomas J. Brothers be suspended for one year for charging a grossly unreasonable fee. Mr. Brothers claims that the Board abused its discretion when it denied his motion to remand for introduction of further evidence surrounding his newly diagnosed medical condition. We disagree and hold that the Board acted within its discretion. We also decline to remand for additional evidence regarding the specific nature of the fee agreement. In the alternative, Mr. Brothers challenges the recommended sanction. We also conclude that the recommended one-year suspension is appropriate.

## FACTS

Thomas J. Brothers was admitted to the practice of law in 1980. His solo practice focuses on estate planning, wills, and trusts. Mr. Brothers prepared a living trust for Ms. Stella Hawkins in 1994. In 1996, Ms. Hawkins and her son Larry Matthews approached Mr. Brothers and explained that she was having ongoing problems with another son, "Corky" Matthews. Ms. Hawkins wanted Mr. Brothers to adjust her estate plan by creating an irrevocable living trust, naming Larry Matthews as trustee and leaving all of her property to him.

Soon after the 1996 trust was created, Ms. Hawkins decided to sell her home. At that time Mr. Brothers discovered that in 1990 Ms. Hawkins had conveyed the house to another living trust, which she had created in 1987 with the help of another attorney. Ms. Hawkins wanted Mr. Brothers to transfer the house from her 1987 trust to her 1996 trust. Mr. Brothers concluded that a legal challenge to the transfer was likely because it would eliminate Corky Matthews' interest in the house.

Mr. Brothers claims that Larry Matthews did not want to pay an hourly or flat fee for what Mr. Brothers predicted would amount to substantial legal work if the transfer were challenged. On July 2, 1996, Mr. Brothers and Larry Matthews agreed in writing to a fee of one-third of the value of the house in exchange for " 'all necessary legal services to clear title,' " payable " '[o]n the compromise or termination of such services.' " Finding of fact 6. On the same day, Mr. Brothers' paralegal prepared a quitclaim deed to transfer Ms. Hawkins' home from the 1987 trust to the 1996 trust, which Ms. Hawkins promptly executed. The paralegal also prepared a request for distribution from Ms. Hawkins' annuity for $36,663, the amount of Mr. Brothers' fee, which Ms. Hawkins also signed on that day. Mr. Brothers knew at the time that his fee amounted to a significant portion of Ms. Hawkins' estate.

On July 29, 1996, Mr. Brothers deposited a check for $36,663 from Ms. Hawkins' annuity company into his interest-bearing trust account. He distributed the fee to his paralegal and himself shortly thereafter. At that time, Mr. Brothers charged other clients as little as $50 to prepare a quitclaim deed.

Corky Matthews never challenged the 1996 living trust or the transfer of the house. In 1998, Larry Matthews filed a grievance with the WSBA complaining about the amount of the fee. Immediately, Mr. Brothers expressed to disciplinary counsel a willingness to discuss the fee, and after the complaint was filed, he wrote to Larry Matthews to try to settle the issue. Just after the disciplinary hearing, Mr. Brothers sent Larry Matthews a full refund plus 12 percent interest accrued from 1996 to 2001.

The hearing officer also found that Mr. Brothers had previously been suspended from the practice of law for three months in 1999, based on violations of RPC 1.5(a) (unreasonable fees) and RPC 1.14 (trust account rules). In April 1995, the personal representatives of an estate filed a grievance after Mr. Brothers withdrew $35,000 in fees and travel reimbursements, of which he eventually repaid $25,000 at the suggestion of disciplinary counsel. Although the violation was based on a failure to communicate the basis for the fee, rather than unreasonableness, the circumstances of the previous violation are factually similar to the current one.

In this case, the hearing officer concluded that Mr. Brothers had violated RPC 1.5 by charging an unreasonable fee.[1] He also found both aggravating and mitigating factors. Mr. Brothers' prior disciplinary offense and his selfish motive were aggravating factors. Mitigating factors included his good faith, but untimely, effort at restitution

---

[1] The hearing officer also found that, in a set of unrelated circumstances, Mr. Brothers violated RPC 5.4(a) and (b) (sharing fees with a nonlawyer and forming a partnership with a nonlawyer). He received a reprimand for this violation and does not appeal that sanction. These concurrent offenses allowed the hearing officer to consider "multiple offenses" as an aggravating factor.

and his cooperative attitude. Ultimately, the hearing officer recommended a one-year suspension.

The WSBA appealed to the Board, arguing that Mr. Brothers should be disbarred. Mr. Brothers moved to remand the proceedings back to the hearing officer for consideration of additional evidence regarding a recently diagnosed medical condition. The majority of the Board denied the motion to remand because "it [did] not meet the requirements set out in the Rules for Lawyer Discipline and Civil Rules." Disciplinary Board Order at 1. In the alternative, Mr. Brothers conceded that he had charged an unreasonable fee, but argued that the appropriate sanction for his violation was a reprimand. The majority (eight members) of the Board found that the hearing officer's findings of fact were supported by substantial evidence, held that the hearing officer's conclusions of law were correct, and adopted the recommended one-year sanction for the reasons given by the hearing officer.

Four board members dissented,[2] arguing that they "would have sent this matter back to the hearing officer for additional evidence regarding the fee agreement." Disciplinary Board Dissent. Specifically, the dissenting members wanted to determine whether the fee arrangement involved a contingent fee or a flat fee based on a percentage. If the fee were indeed contingent, they would have requested more evidence surrounding the contingency. They would also have requested a finding regarding Larry Matthews' understanding of the fee and how it was calculated.

Mr. Brothers exercised his right to appeal to this court. He contends that the Board abused its discretion when it declined to remand for further findings regarding his newly discovered medical condition. He also asks this court to remand for further evidence regarding the specific nature of the fee agreement. In the alternative, he argues that this court should impose a reprimand rather than a one-year suspension.

[2] One board member recused.

## ISSUES

1. Whether the Board abused its discretion by denying Mr. Brothers' motion to remand for further evidence regarding his newly diagnosed medical condition.

2. Whether the majority of the Board erred by not remanding to the hearing officer for further evidence regarding the specific nature of the fee agreement.

3. Whether a one-year suspension, recommended by both the Board and the hearing officer, is an appropriate sanction in this case.

## ANALYSIS

 This court has plenary authority in all matters of attorney discipline. *In re Disciplinary Proceeding Against Carmick*, 146 Wn.2d 582, 593, 48 P.3d 311 (2002) (citing former RLD 2.1). Even so, unchallenged findings of fact, affirmed by the Board, are accepted as verities on appeal. *Id.* at 594. In addition, we give "considerable weight" to the Board's sanction recommendations, *In re Disciplinary Proceeding Against Kuvara*, 149 Wn.2d 237, 246, 66 P.3d 1057 (2003), and do " 'not lightly depart from [them].' " *In re Disciplinary Proceeding Against Anschell*, 141 Wn.2d 593, 607, 9 P.3d 193 (2000) (quoting *In re Disciplinary Proceeding Against Dann*, 136 Wn.2d 67, 84, 960 P.2d 416 (1998), and citing *In re Disciplinary Proceeding Against Haskell*, 136 Wn.2d 300, 317, 962 P.2d 813 (1998)).

1. *Newly Diagnosed Medical Condition.* Mr. Brothers contends that the Board erred by denying his motion to remand for further evidence regarding his newly diagnosed medical condition.[3] He argues that the condition affected his mental state at the time of his misconduct and that it should be considered as a mitigating factor.

 In a disciplinary proceeding, a respondent may request that the Board remand for a new hearing to

---

[3] The details of Mr. Brothers' medical condition have been sealed pursuant to GR 15.

consider newly discovered evidence. Former RLD 6.5(a) (1997).[4] To justify remand, a moving party must show, inter alia, that the evidence could not have been discovered before the original hearing by the exercise of due diligence and that the new evidence will likely change the result. *See Kuvara*, 149 Wn.2d at 249; *see also* former RLD 4.1(a) (1992); CR 59(a). We conclude that Mr. Brothers has not established a connection between his newly diagnosed medical condition and his misconduct that is sufficient to convince us that the condition influenced his mental state. We also conclude that the condition cannot be considered as a mitigating factor because we are not convinced that the condition actually caused the misconduct. *See* ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS std. 9.32(i)(2) (1991 & Supp. 1992) (ABA STANDARDS) (requiring a showing that the mental disability in question caused the misconduct, to justify mitigation); *see also Kuvara*, 149 Wn.2d at 248. Therefore, introduction of new evidence regarding Mr. Brothers' newly diagnosed medical condition would not have been likely to change the result.[5]

Finally, Mr. Brothers relies on *In re Disciplinary Proceeding Against Hankin*, 116 Wn.2d 293, 804 P.2d 30 (1991), a case in which this court remanded for introduction of new evidence. *Id.* at 301. However, in *Hankin* there was no prior Board decision that would have required deference, and the requirements for considering a mental disability as a mitigating factor have since become more rigorous. *Kuvara*, 149 Wn.2d at 249. Thus, reliance on *Hankin* is misplaced. In sum, we conclude that the Board acted well within its discretion when it refused to remand.

■ 2. *Fee Agreement*. Mr. Brothers next contends that the Board should have remanded for more specific findings

---

[4] ELC 16.1 states that those rules must apply to pending matters or investigations not ordered to hearing by October 1, 2002. The Board decided this matter on July 11, 2002. Thus, the Rules for Lawyer Discipline apply in this case. Even so, ELC 11.11 did not substantively change RLD 6.5.

[5] Because introduction of new evidence regarding Mr. Brothers' medical condition would not have been likely to change the result, we need not address whether the evidence was in fact newly discovered.

regarding the exact nature of the fee agreement, as recommended by the dissenting members of the Board. Mr. Brothers suggests the record was inadequate to permit complete review, arguing that testimony from Larry Matthews would have shed light on Mr. Brothers' mental state at the time of the misconduct. However, Mr. Brothers could have called Larry Matthews as a witness at the original hearing. *See* former RLD 6.5(a), 4.1(a); CR 59(a)(4) (requiring new evidence to be newly discovered). More importantly, Mr. Brothers has conceded that he violated RPC 1.5(a) by charging an excessive fee. Thus, further findings are unnecessary because Mr. Brothers' fee was unreasonable, regardless of its character. We decline to remand for additional evidence regarding the specific nature of the fee agreement.

■■ 3. *Sanction.* In the alternative, Mr. Brothers argues that the Board's one-year recommended sanction is inappropriate and asks this court to impose only a reprimand. In Washington, the *ABA Standards* govern sanctions in lawyer discipline cases. *In re Disciplinary Proceeding Against Halverson,* 140 Wn.2d 475, 492, 998 P.2d 833 (2000). When reviewing a recommended sanction from the Board, this court must first evaluate whether the Board properly established the presumptive sanction and whether it properly weighed aggravating and mitigating factors under the *ABA Standards.* This court must also determine whether the remaining *Noble* factors warrant deviation from the sanction established under the *ABA Standards. Kuvara,* 149 Wn.2d at 259 (eliminating three *Noble* factors, leaving only unanimity and proportionality). Although this court is not bound by the Board's recommendation, as " 'the only body to hear the full range of disciplinary matters, the [Disciplinary] Board has the opportunity to develop unique experience and perspective in the administration of sanctions.' " *Dann,* 136 Wn.2d at 84 (quoting *In re Disciplinary Proceeding Against Noble,* 100 Wn.2d 88, 94, 667 P.2d 608 (1983)). Therefore, we do not lightly depart from board sanction recommendations.

 Presumptive Sanction. Mr. Brothers violated duties he owed as a professional when he charged the unreasonable fee. ABA STANDARDS std. 7.0. Under standard 7.2, suspension is appropriate where the lawyer acted knowingly and caused actual or potential injury. *Id.* at std. 7.2. Knowledge is the "conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." *Id.* at Definitions.

 Mr. Brothers contends that his misconduct was the result of negligence and he did not act with conscious knowledge. He claims that he entered into a contingent fee agreement only because Larry Matthews would not agree to an hourly or flat fee in the face of Mr. Brothers' prediction that Corky Matthews would probably mount a long and complicated legal challenge. Mr. Brothers asserts that he simply failed to recognize that if his prediction were wrong, his fee would be unreasonable. Therefore, he argues his state of mind was not as culpable as that of others to whom this court has attributed knowledge. He relies on *Carmick*, 146 Wn.2d at 596, and *Anschell*, 141 Wn.2d at 598, where both lawyers lied either to the court or to clients. However, outright dishonesty is not a necessary element to a finding that an attorney acted knowingly. *See In re Disciplinary Proceeding Against McMullen*, 127 Wn.2d 150, 155, 169, 896 P.2d 1281 (1995) (holding attorney acted with knowledge even though he did not lie to his elderly client when he borrowed a large sum from her on an unsecured basis).

 Mr. Brothers admitted that when he distributed Ms. Hawkins' funds to himself and his paralegal, he knew that he had done very little legal work for a very large fee. Less than a year earlier, Mr. Brothers had returned $25,000 to another client at the suggestion of disciplinary counsel because of a disagreement as to the basis for the large fee. Thus, we have no doubt that Mr. Brothers was consciously aware of the nature of his conduct; he acted knowingly and he does not dispute that his conduct harmed Ms. Hawkins. Thus, the appropriate presumptive sanction is suspension.

<u>Aggravating and Mitigating Circumstances</u>. This court must next evaluate whether aggravating and mitigating circumstances support a deviation from the presumptive sanction. ABA Standards std. 9.0; *In re Disciplinary Proceeding Against Juarez*, 143 Wn.2d 840, 878, 24 P.3d 1040 (2001). The hearing officer found that the prior disciplinary offense and dishonest or selfish motive were aggravating factors.[6] Mr. Brothers' good faith effort to make restitution and his cooperative attitude were mitigating factors.

 Mr. Brothers argues that his prior offense, withdrawing a large sum of money from an estate account without establishing a basis for the fee, should not be given great weight because that disciplinary action did not occur until after this grievance was filed. Yet even though Mr. Brothers had not yet been formally disciplined for the first offense, he was aware that he was under investigation, and he had already returned the $25,000 when he charged Ms. Hawkins a grossly unreasonable fee. Thus, Mr. Brothers' prior offense should be given great weight in determining the proper sanction.

 The WSBA contends that the hearing officer and the Board failed to recognize additional aggravating factors. First, the WSBA asserts that when Mr. Brothers withdrew a large amount of money from a client account for a second time, a pattern of misconduct was established. However, we have generally considered a pattern of misconduct to be an aggravating factor where multiple violations occurred, involving multiple clients, over an extended period of time. *See, e.g., Juarez*, 143 Wn.2d at 879; *Anschell*, 141 Wn.2d at 615; *Halverson*, 140 Wn.2d at 499. Because only two violations of RPC 1.5 occurred in this case, a pattern is not present here. Second, the WSBA characterizes Larry Matthews, who entered into the contingent fee agreement with Mr. Brothers, as a vulnerable victim because he is not college educated. We hesitate to classify a victim as "vulnerable" absent a more concrete basis of

---

[6] Mr. Brothers' concurrent offenses allowed the hearing officer to consider "multiple offenses" as an aggravating factor. *See supra* note 1.

vulnerability. *See, e.g., Carmick,* 146 Wn.2d at 606. Finally, the WSBA argues that Mr. Brothers was indifferent to restitution until after the hearing date. However, the Board properly considered the timing of Mr. Brothers' restitution when it did not give the restitution full weight as a mitigating factor. Therefore, we conclude that no additional aggravating factors need be considered.

In sum, we must balance Mr. Brothers' prior disciplinary sanction and his selfish motive against his eventual restitution and his cooperative attitude. We conclude that the prior disciplinary offense deserves great weight, given the factually similar circumstances surrounding Mr. Brothers' prior RPC 1.5 violation. The prior offense paired with selfish motive outweighs the belated restitution and cooperative attitude, justifying a significant suspension. However, deviation from the presumptive sanction of suspension is not warranted.

Unanimity and Proportionality. Finally, we must determine whether the *Noble* factors justify deviation from the recommended one-year suspension. *Noble,* 100 Wn.2d at 95-96. We recently reevaluated the *Noble* factors and determined that only two of them remain relevant: the degree of board unanimity and the proportionality of the sanction. *See Kuvara,* 149 Wn.2d at 259. The lack of board unanimity does not significantly influence our calculation of Mr. Brothers' sanction because the Board's dissent does not take issue with the severity of the sanction, and we found Mr. Brothers' argument based on that dissent to be without merit.

Mr. Brothers argues that a one-year suspension is disproportionate to other Washington cases involving improper fees, citing *In re Disciplinary Proceeding Against Boelter,* 139 Wn.2d 81, 985 P.2d 328 (1999); *Haskell,* 136 Wn.2d 300; and *Dann,* 136 Wn.2d 67. Mr. Brothers reasons that he does not deserve suspension because the suspended attorneys in those cases all somehow lied to their clients. *Boelter,* 139 Wn.2d at 86-87; *Haskell,* 136 Wn.2d at 306; *Dann,* 136 Wn.2d at 72. However, Mr. Brothers fails to account for both

the magnitude of the fee he charged and the significance of his prior fee-related misconduct. In fact, courts imposing sanctions under similar circumstances have imposed one-year suspensions. *See, e.g., McMullen*, 127 Wn.2d at 154-56, 171 (imposing a one-year suspension where attorney improperly borrowed and never repaid $40,000 from an elderly client on an unsecured basis); *In re Gerard*, 132 Ill. 2d 507, 548 N.E.2d 1051, 139 Ill. Dec. 495 (1989) (imposing a one-year suspension where an attorney, in a first-time offense, charged a grossly unreasonable fee for very little legal work). We conclude that Mr. Brothers has not raised any cases that convince us that his sanction is disproportionate. Thus, we adopt the one-year suspension recommended by the hearing officer and the Board.

## CONCLUSION

We hold that the Board acted within its discretion when it declined to remand for evidence regarding Mr. Brothers' newly diagnosed medical condition. We also decline to remand for more specific evidence regarding the fee agreement. Finally, we adopt the Disciplinary Board's recommended sanction and impose a one-year suspension.

ALEXANDER, C.J., and JOHNSON, MADSEN, IRELAND, BRIDGE, CHAMBERS, and FAIRHURST, JJ., concur.

SANDERS, J. (concurring) — I concur only because "Mr. Brothers has conceded that he violated RPC 1.5(a) by charging an excessive fee." Majority at 584. However, in the context of a flat or contingent fee agreement, the services actually rendered as viewed through the lens of 20-20 hindsight do not necessarily an "excessive fee" make. Absent other factors, I would protect the right of clients and attorneys to freely contract for agreed compensation to be paid for agreed services. Thus I believe the majority opinion should not be taken as an invitation to rewrite, or second guess, retainer agreements between attorneys and clients.