[No. 17502-1. En Banc.]
Argued November 18, 2003. Decided February 10, 2005.

*In the Matter of the Disciplinary Proceeding Against* ALFREDO LOPEZ, *an Attorney at Law.*

574

MADSEN, OWENS, C. JOHNSON, and SANDERS, JJ., dissent by separate opinions; J.M. JOHNSON, J., did not participate in the disposition of this case.

*Alfredo Lopez,* pro se.
*Kurt M. Bulmer,* for petitioner.
*Douglas J. Ende,* for the Bar Association.

¶1 FAIRHURST, J. — A lawyer charged with three counts of misconduct was given a 60-day suspension related to his failure to file an opening brief in the United States Court of Appeals for the Ninth Circuit. He appeals the findings of misconduct and the 60-day suspension. We find that the Washington State Bar Association (WSBA) proved all three counts of misconduct by a clear preponderance of the evidence and order the 60-day suspension.

## I. FACTS

A. Factual History

¶2 Alfredo Lopez was admitted to the WSBA on November 6, 1987, and his legal career has involved a substantial amount of criminal defense. Between 1996 and 1997, Lopez represented Hugo Guzman in the United States District Court for the Eastern District of Washington. Guzman pleaded guilty and was sentenced to 70 months imprisonment. Unhappy with the calculation of his sentence, Guzman asked Lopez to file a notice of appeal.

¶3 Lopez timely filed the notice of appeal and the Ninth Circuit set a July 29, 1997, deadline for Guzman's opening brief. Lopez failed to file the brief. On January 23, 1998, the Ninth Circuit entered a notice of default instructing Lopez

to correct the deficiency within 14 days and file a motion for relief from default. The notice warned that failure to timely respond would result in Lopez being relieved of his appointment and such other action as the court deemed appropriate, including imposition of disciplinary and monetary sanctions.

¶4 Lopez timely filed a motion for relief from default and an extension of time to file an opening brief until March 20, 1998. Lopez explained he was retained to represent Guzman "in regard to his appeal" and attributed his delay "to an extremely busy trial schedule, both in and out of the State of Washington." Ex. 2b. The Ninth Circuit granted the motion and gave a more lenient deadline of April 20, 1998. The order warned that "[a]ny further requests for extension of time for filing the opening brief are strongly disfavored." Ex. 2c.

¶5 Lopez did not file the opening brief by April 20, 1998, and on August 13, 1998, the Ninth Circuit entered an order reiterating the instructions and warnings contained in its previous notice of default. Lopez timely filed a second motion for relief from default and an extension of time requesting until September 8, 1998, to file an opening brief. Lopez's accompanying declaration explained again that Guzman retained him "in regard to his appeal" and attributed the delay to an "extremely busy trial schedule" and recent office relocation. Ex. 2c.

¶6 The Ninth Circuit granted an extension to September 8, 1998. The order noted that Lopez missed two previous deadlines and that failure to timely file the opening brief may result in his removal as counsel and may subject him to monetary sanctions. Lopez did not file the opening brief or inform the Ninth Circuit that he was no longer the attorney of record before September 8, 1998.

¶7 In a letter dated September 25, 1998, attorney Antonio Salazar informed Lopez that Guzman retained Salazar to represent him in regard to his appeal. He enclosed an authorization for release of legal information signed by Guzman and naming Salazar as his attorney.

¶8 Lopez testified that he transferred Guzman's file to Salazar on September 29, 1998. Lopez sent a letter with the files explaining: "[w]hen I received your letter I had not finished the opening brief for this appeal case, however I was granted an extension until September 7, 1998."[1] Ex. 5. The letter also requested that Salazar immediately inform the Ninth Circuit of his retention. Salazar did not file a notice of appearance or a notice of substitution at this time.

¶9 On March 10, 2000, the Ninth Circuit issued an order to show cause stating:

> Within 14 days of this order, appellant's retained counsel, Alfredo R. Lopez, Esq., shall show cause in writing why he should not be sanctioned in an amount not less than $500.00 for failing to comply with this court's rules and orders. Failure to file a timely response or provide an adequate explanation may result in the imposition of sanctions without further notice.
>
> Appellant is informed that retained counsel has failed to prosecute this appeal. See 9th Cir. Gen. Order 2.3. Within 28 days of this order, appellant shall: (1) retain new counsel who shall file a notice of appearance; or (2) file a motion for appointment of counsel at government expense based on a completed financial affidavit (CJA Form 23); or (3) inform the court in writing of appellant's clear and unequivocal intention to seek self-representation upon appeal.
>
> Failure to comply with this order may result in the dismissal of this appeal for failure to prosecute. See 9th Cir. R. 42-1.

Ex. 2g. Shortly after Lopez received the order to show cause, his assistant Heather Webb called the Ninth Circuit to inform the court that Lopez was no longer the attorney of record. Lopez also contacted Salazar and Guzman's sister regarding the order to show cause.

¶10 On May 8, 2000, the Ninth Circuit issued an order granting Guzman an additional 21 days to comply with its March 10, 2000, order. Because the order referred to Lopez as Guzman's "retained counsel," Ex. 2h, Lopez instructed

---

[1] The extension was actually until September 8, 1998.

Webb to draft a letter to the court. The letter dated May 16, 2000, explained:

> Hugo B. Guzman discharged me when he retained new counsel for his appeal. Pursuant to Mr. Guzman's instruction, I provided his entire file to the law office of Antonio Salazar . . . I was under the impression that when I provided the file to Mr. Salazar he would be filing a notice of appearance and that I would no longer be responsible to prosecute this appeal.

Ex. 6. Copies were sent to Guzman's sister and Salazar. Although addressed to the Ninth Circuit, the letter was never entered into the Ninth Circuit's docket.

¶11 On May 25, 2000, Salazar filed a notice of appearance and a declaration requesting an amended briefing schedule. The declaration explained that Salazar received Guzman's files from Lopez. However, the declaration, notice of appearance, and cover letter failed to mention when Salazar received the files from Lopez or when Salazar's representation of Guzman commenced.

¶12 On June 9, 2000, the Ninth Circuit issued an order granting Salazar's request for an amended briefing schedule and stating the court's order to show cause regarding sanctions against Lopez would be resolved separately. Lopez received a copy of this order.

¶13 On June 28, 2000, the Ninth Circuit entered an order finding that Lopez failed to respond to its March 10, 2000, order to show cause and imposing a $500 sanction. Lopez timely paid the sanction and filed a motion for reconsideration, which was denied. Ultimately, the Ninth Circuit affirmed Guzman's sentence. *United States v. Guzman,* 5 Fed. Appx. 631, 2001 WL 201573, at *1-2, 2001 U.S. App. Lexis 3179 (9th Cir.).

B. Procedural History

¶14 The Ninth Circuit sent the WSBA a copy of its order finding Lopez in violation of its order to show cause, and the WSBA initiated a grievance. At the recommendation of the review committee, the WSBA filed a formal complaint against Lopez alleging three counts of misconduct.

¶15 Count I alleged that Lopez violated Rules of Professional Conduct (RPC) 1.3 and/or RPC 3.2 "[b]y failing to act with reasonable diligence and promptness in representing a client, and by failing to make reasonable efforts to expedite litigation consistent with the interests of the client." Formal Compl. at 2. Count II alleged that Lopez violated RPC 1.15(d) "[b]y failing to take reasonably practicable steps to protect his client's interests upon termination of the representation." *Id*. Count III alleged that "[b]y willfully disobeying or violating a court order directing him to do an act which he ought in good faith to do, Mr. Lopez is subject to discipline under [former Rules of Lawyer Discipline] RLD 1.1(b) [1997]."[2] *Id*.

¶16 During the hearing before the hearing officer, Lopez presented defenses to each count. He also testified that he received a previous reprimand for failing to timely file a lawsuit on a client's behalf[3] in violation of RPC 1.1 and RPC 1.3, failing to keep the client reasonably informed of the status of the case and to comply with reasonable requests for information in violation of RPC 1.4(a), and willfully disobeying a court order requiring him to comply with the terms of a judgment in violation of former RLD 1.1(b).[4]

¶17 The hearing officer entered findings of fact (FOF), conclusions of law (COL), and recommendations. The hearing officer found that the WSBA proved all three counts by a clear preponderance of the evidence and concluded that Lopez acted knowingly in regard to counts I and III and negligently in regard to count II.

¶18 The hearing officer applied the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 &

---

[2] On October 1, 2002, the RLDs were supplanted by the Rules for Enforcement of Lawyer Conduct. At the time of Mr. Lopez's misconduct, the RLDs were still in effect.

[3] The client involved in the prior discipline matter hired Lopez in 1993.

[4] The trial court found Lopez in contempt for failing to comply with its order relating to the creation of a security interest. The trial court issued a bench warrant for Lopez's arrest in October 1999 because Lopez had failed to purge the contempt.

Supp. 1992) (hereinafter ABA *Standards*) to determine the presumptive sanction. He applied suspension for lack of diligence, ABA *Standards* std. 4.4, suspension for abuse of legal process, ABA *Standards* std. 6.2, and reprimand for violations of duties owed as a professional, ABA *Standards* std. 7.0.

¶19 The hearing officer considered four aggravating factors and applied three. First, he found multiple offenses under ABA *Standards* std. 9.22(d) because "Lopez missed four deadlines and violated four separate ethical and disciplinary rules." Findings of Fact, Conclusions of Law and Hr'g Officer's Recommendation (FFCLR) at 6. Second, he found refusal to acknowledge the wrongful nature of the misconduct under ABA *Standards* std. 9.22(g) because "Lopez did not accept responsibility but sought to justify his conduct with explanations that were insufficient." *Id.* Third, he found substantial experience in the practice of law under ABA *Standards* std. 9.22(i) because "Lopez had practiced for 10 years at the time of the misconduct." *Id.* The hearing officer rejected the aggravating factor of prior misconduct under ABA *Standards* std. 9.22(a) because Lopez's prior reprimand was "[i]mposed after the facts of this case." *Id.* at 7.

¶20 The hearing officer considered four mitigating factors and applied one—the imposition of other penalties and sanctions under ABA *Standards* std. 9.32(k) because Lopez paid the $500 sanction. He rejected absence of dishonest or selfish motives under ABA *Standards* std. 9.32(b) because " '[h]anging onto' a case that is potentially a fee producer is not entirely unselfish."[5] *Id.* He rejected full and free disclosure to the Disciplinary Board (Board) or cooperative attitude toward the proceedings under ABA *Standards* std. 9.32(e) because the testimony was in dispute. Finally, he rejected remoteness of the prior offenses under ABA *Standards* std. 9.32(m) because Lopez's prior offenses were not remote to the current offenses.

---

[5] The hearing officer rejected this mitigating factor although the WSBA acknowledged the factor's applicability in its hearing brief.

¶21 The hearing officer's recommendations concluded that "[t]he aggravating factors outweigh or neutralize the mitigating factors" and suggested a 60-day suspension for count I, along with censures for counts II and III. *Id.* at 7.

¶22 Lopez appealed the hearing officer's decision to the Board. He challenged FOF 17-22, contending that the WSBA failed to prove the counts by a clear preponderance of the evidence and arguing that if he must be sanctioned, he should receive at most a single reprimand. The WSBA argued that the hearing officer erred in rejecting Lopez's prior disciplinary offense as an aggravating factor. The Board voted 11-1 to adopt the hearing officer's findings of fact, conclusions of law, and recommendations, with the modification that the two recommended censures be merged into the 60-day suspension. The dissenting Board member would hold that the WSBA did not prove any of the counts by a clear preponderance of the evidence.

¶23 Before this court, Lopez seeks dismissal of the three counts of misconduct. If a sanction is imposed, he requests at most a single reprimand.

## II. ISSUES

A. Whether the hearing officer properly determined the presumptive sanction for Lopez's misconduct.

B. Whether the hearing officer properly analyzed the aggravating and mitigating factors.

C. Whether the Board properly merged the two censures into the 60-day suspension.

## III. STANDARD OF REVIEW

¶24 "The Washington State Supreme Court has plenary authority for lawyer discipline." *In re Disciplinary Proceeding Against Whitt*, 149 Wn.2d 707, 716, 72 P.3d 173 (2003). However, we give considerable weight to the hearing officer's findings of fact, particularly when the credibility

and veracity of witnesses are at issue. *Id.* at 717. "We will uphold the hearing officer's findings of fact if they are supported by a clear preponderance of the evidence, even if the evidence is disputed."[6] *In re Disciplinary Proceeding Against Kagele*, 149 Wn.2d 793, 813, 72 P.3d 1067 (2003). We uphold the hearing officer's conclusions of law only if they are supported by the findings of fact. *In re Disciplinary Proceeding Against Huddleston*, 137 Wn.2d 560, 568-69, 974 P.2d 325 (1999).

■■ ¶25 Similarly, we uphold the "Board's findings of fact if they are supported by a clear preponderance of the evidence." *In re Disciplinary Proceeding Against Carmick*, 146 Wn.2d 582, 594, 48 P.3d 311 (2002). We give greater weight to the Board's recommended sanction than the hearing officer's conclusions. *In re Disciplinary Proceeding Against Cohen*, 150 Wn.2d 744, 754, 82 P.3d 224 (2004) (*Cohen* II). "As the only body to hear the full range of disciplinary matters, the Board has the opportunity to develop unique experience and perspective in the administration of sanctions. We should not lightly depart from recommendations shaped by this experience and perspective." *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 94, 667 P.2d 608 (1983). We will adopt the Board's recommended sanction unless one of the remaining *Noble* factors—the proportionality of the sanction to the misconduct and the extent of agreement amongst the Board—requires otherwise. *In re Disciplinary Proceeding Against Kuvara*, 149 Wn.2d 237, 259, 66 P.3d 1057 (2003).

## IV. ANALYSIS

■ ¶26 The WSBA must prove all allegations of misconduct by a clear preponderance of the evidence. Former RLD 4.11(b) (1992). Once a violation is proved, the court engages in a two-step process in order to decide the proper sanction.

---

[6] A clear preponderance requires greater certainty than that required for a simple preponderance but less than that required for beyond a reasonable doubt. *In re Disciplinary Proceeding Against Allotta*, 109 Wn.2d 787, 792, 748 P.2d 628 (1988).

*In re Disciplinary Proceeding Against Anschell*, 149 Wn.2d 484, 501, 69 P.3d 844 (2003) (*Anschell* II). First, we determine the proper presumptive sanction. *Id.* Second, we determine the impact of the applicable aggravating and mitigating factors. *Id.*

A. Presumptive Sanction

■ ¶27 The presumptive sanction is determined by reviewing (1) the ethical duties violated by the attorney, (2) the attorney's mental state, and (3) the actual or potential injury caused by the attorney's misconduct. *In re Disciplinary Proceeding Against McMullen*, 127 Wn.2d 150, 163, 896 P.2d 1281 (1995). We find that the hearing officer properly analyzed these three factors and properly determined that the presumptive sanction for Lopez's three counts of misconduct was a 60-day suspension.

*1. The ethical duties violated*

a. Count I: violation of RPC 1.3 and/or RPC 3.2

■ ¶28 RPC 1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." RPC 3.2 states that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

¶29 Lopez challenges FOF 21, which found Lopez's limited scope of representation defense was insufficient to relieve him of the duty to file the opening brief, and COL 1, which concluded count I was proved by a preponderance of the evidence. Lopez contends that he did not file the brief because he did not have the authority from his client to do so and the attorney-client privilege constrained him from informing the Ninth Circuit of the limited scope of his representation.

¶30 We uphold FOF 21 and COL 1. Lopez had a duty to file the opening brief. He was the attorney of record when the brief was due, and the Ninth Circuit repeatedly directed him to file it. He twice filed documents with the Ninth

Circuit stating he was retained to represent Guzman and attributing his delay to "an extremely busy trial schedule" and/or recent office relocation, not lack of authority. Ex. 2e. Lopez was nearly six months beyond the first deadline when the Ninth Circuit issued its first default notice. Lopez was nearly four months beyond the second deadline when the Ninth Circuit entered an order of default. He was almost three weeks beyond the third deadline when he transferred Guzman's file to Salazar. Fourteen months elapsed between the initial deadline and the date Lopez testified that he transferred Guzman's file to Salazar. Lopez violated RPC 1.3 and RPC 3.2.

 b. Count II: violation of RPC 1.15(d)

 ¶31 RPC 1.15(d) requires:

> A lawyer [to] take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.

¶32 Lopez challenges COL 2, which found that the WSBA proved count II by a clear preponderance of the evidence. Lopez alleges he had no duty to follow up with Salazar once he transferred Guzman's file with a letter asking Salazar to inform the Ninth Circuit that Salazar was the attorney of record. He also contends that RPC 1.15(d) does not require a discharged lawyer to file a notice of withdrawal or to ensure that substitute counsel appears as counsel of record.

¶33 RPC 1.15(d) states a general rule and provides six nonexclusive examples. Lopez appears to read the examples as defining the rule and asserts that because filing a notice of withdrawal and/or ensuring that the subsequent attorney appears as counsel of record are not listed among the examples, RPC 1.15(d) does not require him to take such actions. The critical language of RPC 1.15(d) is that

"[a] lawyer shall take steps to the extent reasonably practicable to protect a client's interests."

¶34 We uphold COL 2 because under the facts in this case, Lopez failed to "take steps to the extent reasonably practicable to protect a client's interests" upon the termination of his representation; thus, he violated RPC 1.15(d). RPC 1.15(d). When Lopez transferred Guzman's files to Salazar, Lopez had already missed two deadlines for the opening brief and was three weeks beyond the third deadline. The hearing officer properly concluded it was reasonably practicable for Lopez to ensure that the Ninth Circuit no longer deemed him counsel of record and/or that Salazar had filed a notice of appearance. Because Lopez acknowledged he was "on the hook," Transcript (May 14, 2002) (TR) at 103, knew how to get "off the hook," TR at 106, and was aware Guzman's case required immediate attention, we agree with the conclusion of the hearing officer, which was affirmed by the Board, that under these circumstances, Lopez's failure to make assurances that he was no longer the attorney of record violated RPC 1.15(d). We uphold COL 2.

¶35 Justice Owens' dissent cites two legal malpractice cases, *Barry v. Ashley Anderson, P.C.*, 718 F. Supp. 1492 (D. Colo. 1989), and *Lockhart v. Greive*, 66 Wn. App. 735, 834 P.2d 64 (1992), to support her opinion that Lopez did not breach his duties under RPC 1.15(d) when he failed to file a notice of withdrawal. Dissent (Owens, J.) at 608-09. We find both cases distinguishable. First, they are legal malpractice, not lawyer discipline, cases. Second, neither case factually involves an initial attorney who missed three filing deadlines before he transferred his client's file to the subsequent attorney. This is the point of our very limited holding. *Under the facts of this case* there were reasonably practicable steps that Lopez could have taken to protect his client's interests. Lopez could have filed a notice of withdrawal or a motion for leave of the court to withdraw. Lopez could have ensured or confirmed that Salazar appeared as counsel of record. Lopez could have filed a notice of substi-

tution of counsel. Justice Owens' dissent argues that no Ninth Circuit rule requires an attorney to file a notice of withdrawal. Dissent (Owens, J.) at 607-08. However, this lack of a rule does not alter the fact that Lopez *could have* filed a notice of withdrawal. Moreover, as noted above, a notice of withdrawal was not his only option. There were steps he could have taken, he failed to take those steps, and his failure to do so under the circumstances of this case constitutes a violation of RPC 1.15(d).

c. Count III: violation of former RLD 1.1(b)

¶36 Former RLD 1.1(b) stated that a lawyer may be subjected to disciplinary actions for "[w]illful disobedience or violation of a court order directing him or her to do or cease doing an act which he or she ought in good faith to do or forbear." Lopez challenges FOF 17-20, which pertain to Webb's telephone call and/or letter to the Ninth Circuit, and COL 3, which held that the WSBA proved count III by a clear preponderance of the evidence. Lopez contends that the telephone call Webb made and letter she sent to the Ninth Circuit informing the court that he was no longer representing Guzman complied with the order to show cause.

¶37 Lopez first challenges the portion of FOF 17 that states Lopez "had no reason at that point to believe that the show cause issue had been resolved." Opening Br. of Resp't Att'y at 28; FFCLR at 3. He contends that he believed the order to show cause was a clerical error and that the telephone call made by Webb was sufficient to correct the error.[7]

¶38 Webb testified that she made a telephone call to the Ninth Circuit shortly after Lopez received the March 10, 2000, order to show cause. However, she was unable to recall her specific words during the telephone call, whether

---

[7] Lopez believes this point particularly important because it affects the "willfulness" of his actions.

the Ninth Circuit gave her any additional instructions,[8] whether there was any resolution of the issue, whether she reported back to Lopez, or whether she made notes of the telephone call. Similarly, although Lopez testified that Webb made the telephone call and reported back to him, he could testify only that he did not believe that the Ninth Circuit requested that he do anything further. In light of such tentative evidence to the contrary, the hearing officer properly found that Lopez had no reason to believe that the telephone call resolved the order to show cause. We uphold FOF 17 because it is supported by a clear preponderance of the evidence.

¶39 Lopez next challenges the portion of FOF 18 that states "[t]here is no evidence that the Ninth Circuit ever received this letter as it does not appear in the docket for Mr. Guzman's appeal." Opening Br. of Resp't Att'y at 29; FFCLR at 4. Lopez testified that when he received a copy of the May 8, 2000, order to show cause giving Guzman an additional 21 days to respond to the March 10, 2000, order to show cause, he asked Webb to send a letter to the Ninth Circuit explaining that he no longer represented Guzman, and that Webb in fact sent the letter.

¶40 Lopez suggests, and the WSBA does not object to, amending FOF 18 to read " '[t]here is no evidence that the Ninth Circuit ever considered this letter as it does not appear in the docket for Mr. Guzman's appeal.' " Opening Br. of Resp't Att'y at 30; Answering Br. of WSBA at 30. We approve this amendment because of the stipulation of the parties.

¶41 Lopez finally challenges portions of FOF 19 and 20. We consider these challenges together because they are intertwined. Lopez challenges the portion of FOF 19 which states that the letter Webb sent to the Ninth Circuit did not comply with the order to show cause. Lopez concedes the letter was late. The March 10, 2000, order to show cause requested a written response within 14 days, but the letter

---

[8] Webb merely testified that "[i]t is not very often they give you instructions specifically. They won't tell you what to do." TR at 72.

was not sent until May 16, 2000. Thus, the letter, even if received but not docketed, did not comply with the order to show cause. We uphold the challenged portion of FOF 19 stating the letter did not comply with the order to show cause.

¶42 Lopez challenges FOF 20 and the portion of FOF 19 addressing the telephone call. He argues that the order to show cause permitted either a written response or an adequate explanation and that Webb's telephone call constituted an adequate explanation. The order to show cause specifically stated:

> Within 14 days of this order, appellant's retained counsel, Alfredo R. Lopez, Esq., shall show cause in writing why he should not be sanctioned in an amount not less than $500.00 for failing to comply with this court's rules and orders. Failure to file a timely response or provide an adequate explanation may result in the imposition of sanctions without further notice.

Ex. 2g. The hearing officer found, "[c]onsidering the order in its entirety, this [Lopez's] interpretation is not a reasonable one." FFCLR at 4. We agree. The first sentence of the order very clearly required a written response, as did the urgency of the situation. The second sentence indicates that unless the response was filed timely and had an adequate explanation, sanctions could be imposed without further notice. We uphold FOF 19 and 20.

¶43 The WSBA proved count III by a clear preponderance of the evidence.

### 2. Mental state

■ ¶44 The second factor in determining a presumptive sanction in attorney discipline matters is the lawyer's mental state. *Anschell* II, 149 Wn.2d at 506. A lawyer's mental state may be intentional, knowing, or negligent. *Id.* The ABA *Standards* define each mental state as follows:

> "Intent" is the conscious objective or purpose to accomplish a particular result.

"Knowledge" is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.

"Negligence" is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation.

ABA STANDARDS, *Definitions* at 7.

a. Count I

¶45 Lopez objects to COL 4, which states that he acted knowingly with respect to count I. He contends that, at most, he acted negligently in failing to file the opening brief amidst "conflicting directions—one from the court which set a briefing schedule and one from his client who had not given him permission to go forward." Opening Br. of Resp't Att'y at 36-37.

¶46 The record reveals that Lopez went beyond mere negligence and acted knowingly. Fourteen months elapsed between the first briefing deadline and the date on which Lopez testified that he transferred Guzman's file to Salazar. In those 14 months, Lopez failed to file the opening brief before three filing deadlines. The Ninth Circuit issued serious warnings about the repercussions for failure to prosecute the appeal. In response to the Ninth Circuit, Lopez filed motions for extension of time and relief from default, with supporting declarations explaining that he had "been retained by the appellant, Mr. Hugo Barragan Guzman, to represent him in regard to his appeal," and attributing his delay in filing the brief to an extremely busy trial schedule and/or recent office relocation. Exs. 2b, 2e. The Ninth Circuit granted Lopez's motions, but it issued additional warnings against further requests for extensions.[9] Despite the Ninth Circuit's leniency in granting two extensions and its numerous and serious warnings, Lopez

---

[9] *See* Ex. 2c ("Any further requests for extension of time for filing the opening brief are strongly disfavored."); Ex. 2f ("The court notes that counsel has twice failed to file the opening brief. Accordingly, failure to file timely the opening brief

still failed to file the opening brief before the third deadline. The facts are sufficient to uphold the hearing officer's conclusion that Lopez acted knowingly with respect to count I.

### b. Count II

¶47 While not agreeing that count II was proved, Lopez concedes COL 5 that he acted negligently with respect to count II in "not making sure that Mr. Salazar had done his duty and filed his notice of appearance." Opening Br. of Resp't Att'y at 37. We uphold COL 5.

### c. Count III

¶48 Lopez objects to COL 6, which states that he acted knowingly with respect to count III. He contends that, at most, he acted negligently in failing to determine whether "the phone call to the court was a sufficient response to the show cause." *Id.*

¶49 The record reveals that Lopez went beyond mere negligence and acted knowingly. The March 10, 2000, order to show cause explicitly stated that the attorney shall show cause *"in writing."* Ex. 2g (emphasis added). Lopez did not respond in writing until May 16, 2000. These facts are sufficient to uphold the hearing officer's conclusion that Lopez acted knowingly with respect to count III.

*3. The actual or potential injury caused by a lawyer's misconduct*

¶50 The third and final factor in determining the proper presumptive sanction in attorney discipline matters is the actual or potential injury caused by the lawyer's misconduct. *Anschell* II, 149 Wn.2d at 507. "Administration of this rule must maintain public confidence in our legal institutions with an eye toward enhancing respect for the law generally. We must therefore administer the rule in a manner which holds individuals accountable for the results,

may result in the court relieving counsel in this appeal and may subject counsel to the imposition of monetary sanctions.").

even unintended results, of their actions." *In re Disciplinary Proceeding Against Curran*, 115 Wn.2d 747, 772, 801 P.2d 962 (1990). While injury is defined as "harm to a client, the public, the legal system, or the profession," potential injury is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct." ABA STANDARDS, *Definitions* at 7.

¶51 Lopez challenges FOF 22, which states "Lopez's conduct caused actual and potential injury to Mr. Guzman, in that his appeal was delayed and subjected to potential dismissal, and it caused injury to the legal system in that the Ninth Circuit was burdened repeatedly with the task of badgering counsel to proceed with the appeal." FFCLR at 4.

¶52 Lopez's misconduct caused actual injury to Guzman because his appeal was delayed. This court has held that " '[p]rolonged delay and procrastination reflect poorly on the profession and may harm the interests of clients and others.' " *In re Disciplinary Proceeding Against Juarez*, 143 Wn.2d 840, 885-86, 24 P.3d 1040 (2001) (quoting *In re Disciplinary Proceeding Against Jamieson*, 98 Wn.2d 865, 868, 658 P.2d 1244 (1983)). "An attorney should endeavor to spare the client that frustration and anxiety which *must be felt* when the client's cause is not pursued with reasonable diligence and promptness." *In re Disciplinary Proceeding Against Fraser*, 83 Wn.2d 884, 889, 523 P.2d 921 (1974) (emphasis added), *overruled on other grounds by In re Disciplinary Proceeding Against Boelter*, 139 Wn.2d 81, 985 P.2d 328 (1999).

¶53 Lopez's misconduct caused potential injury to Guzman in that it subjected his appeal to potential dismissal. After Lopez failed to file the opening brief before three deadlines, the Ninth Circuit issued an order to show cause informing Guzman that Lopez had failed to prosecute his appeal and instructing Guzman to retain new counsel, file a motion for appointment of counsel, or inform the

Ninth Circuit of his intent to seek self-representation. The order also warned that "[f]ailure to comply with this order may result in the dismissal of this appeal for failure to prosecute." Ex. 2g. Although this warning was specifically directed to Guzman, Lopez's failure to file the opening brief was a necessary and sufficient cause for the warning. But for Lopez's failure to file the opening brief, the Ninth Circuit would not have had to issue such warnings to Guzman. Lopez's actions caused potential injury to Guzman by subjecting his appeal to potential dismissal.

¶54 Finally, Lopez's misconduct caused injury to the legal system in that it resulted in the Ninth Circuit issuing eight notices and/or orders.[10] Lopez asserts that these eight orders are typical of the Ninth Circuit's proceedings. We find that the eight orders represent a series of additional efforts by the Ninth Circuit to motivate Lopez to act on his client's behalf. We further note that the Ninth Circuit made the disciplinary referral to the WSBA. It is not incorrect to say that Lopez's conduct caused injury to the legal system. We find Lopez's challenges unpersuasive and uphold FOF 22 because it is supported by a clear preponderance of the evidence.

### 4. Presumptive sanctions for these violations

¶55 The hearing officer used the ABA *Standards* to guide his determination of the presumptive sanctions. He found the following standards applied:

**4.4 Lack of Diligence**

4.42 Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

---

[10] The Ninth Circuit issued a default notice, an order granting relief from default and extension of time, an order requiring counsel to correct deficiencies, an order granting relief from default and extension of time, an order to show cause, an order to show cause giving Guzman 21 additional days to remedy Lopez's failure to prosecute the appeal, an order imposing a $500 fine against Lopez, and an order denying Lopez's motion for reconsideration.

**7.0 *Violations of Duties Owed as a Profession***

7.3 Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.

**6.2 *Abuse of the Legal Process***

6.22 Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or party, or causes interference or potential interference with a legal proceeding.

FFCLR at 5-6.

■■ ■■ ¶56 In looking at the sanctions as a whole, the hearing officer properly concluded that the presumptive sanction for Lopez's misconduct was suspension. Where multiple misconduct violations are found, "the 'ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations.' " *In re Disciplinary Proceeding Against Petersen*, 120 Wn.2d 833, 854, 846 P.2d 1330 (1993) (quoting ABA STANDARDS at 6).

### B. Aggravating and Mitigating Factors

¶57 After the presumptive sanctions are determined, the next step is to evaluate any applicable aggravating and mitigating factors to determine the actual sanction. *Anschell* II, 149 Wn.2d at 501. The hearing officer found three aggravating factors: multiple offenses under ABA *Standards* std. 9.22(d), refusal to acknowledge wrongful nature of misconduct under ABA *Standards* std. 9.22(g), and substantial experience in the practice of law under ABA *Standards* std. 9.22(i). The hearing officer rejected one alleged aggravating factor, Lopez's prior disciplinary reprimand under ABA *Standards* std. 9.22(a).

¶58 The hearing officer found that Lopez's payment of the Ninth Circuit's $500 sanction was a mitigating factor under ABA *Standards* std. 9.32(k). However, the hearing officer rejected three other mitigating factors: absence of dishonest or selfish motives under ABA *Standards* std.

9.32(b), full and free disclosure to the Board or cooperative attitude toward proceedings under ABA *Standards* std. 9.32(e), and remoteness of prior offenses under ABA *Standards* std. 9.32(m). Applying these aggravating and mitigating factors, the hearing officer concluded that Lopez should be suspended for 60 days on count I and censured for counts II and III.

¶59 The WSBA argues that the hearing officer failed to recognize Lopez's prior disciplinary offense as an additional aggravating factor under ABA *Standards* std. 9.22(a). The hearing officer rejected Lopez's prior reprimand because it was "[i]mposed after the facts in this case." FFCLR at 7. We find that the hearing officer erred in focusing on the timing of the prior sanction. ABA *Standards* std. 9.22(a) states that prior discipline *offenses* may be considered as an aggravating factor. Our reading of this standard is that the *prior misconduct,* not the sanction for such conduct, must precede the subsequent misconduct, but the attorney must be under investigation for the earlier misconduct at the time of the subsequent misconduct. *See In re Disciplinary Proceeding Against Brothers,* 149 Wn.2d 575, 70 P.3d 940 (2003).

¶60 Lopez's present discipline action has two allegations of misconduct in common with the prior—lack of diligence in violation of RPC 1.3 and willful violation of a court order in violation of former RLD 1.1(b). Because Lopez failed to obey the court order in a previous discipline matter in October 1999 and failed to obey a court order in the current matter in March 2000, his disobedience in the prior case preceded the disobedience in this case. If the record revealed that the discipline investigation preceded the current misconduct, we could consider the prior misconduct as an aggravating factor. Here, the record is unclear so we agree with the hearing officer's conclusion but not his reasoning.

¶61 Lopez challenges the hearing officer's rejection of the mitigating factor of absence of dishonest or selfish motive because the WSBA admitted that this mitigating factor

applied in its hearing brief and during the hearing. The hearing officer rejected this mitigating factor on the ground that " '[h]anging onto' a case that is potentially a fee producer is not entirely unselfish." FFCLR at 7. The WSBA contends that the hearing officer properly rejected this mitigating factor because Lopez testified that he discussed with Guzman the possibility of Guzman's hiring Lopez to handle the appeal. We agree with the WSBA and find that the hearing officer's rejection of this mitigating factor is supported by a clear preponderance of the evidence.

C. Recommended Discipline

¶62 The hearing officer recommended a 60-day suspension for count I and censure for counts II and III. The Board agreed by a vote of 11-1 but merged the two censures into the suspension. Lopez argues all three counts should be dismissed. As an alternative, Lopez argues that he should receive at most a single reprimand instead of the recommended 60-day suspension. This court adopts the sanction recommended by the Board unless the remaining *Noble* factors of proportionality and unanimity require otherwise. *Kuvara*, 149 Wn.2d at 256, 259.

¶63 Proportionality considers "whether the recommended sanction is proportionate to the misconduct." *Anschell* II, 149 Wn.2d at 517. We retained this *Noble* factor "only insofar as the attorney brings forward cases to try to persuade us that the recommended sanction is disproportionate." *Id.* Our goal in applying this factor is to have consistency in the sanctions imposed in attorney discipline cases involving similar misconduct. *In re Disciplinary Proceeding Against Anschell*, 141 Wn.2d 593, 615, 9 P.3d 193 (2000).

¶64 Lopez also argues that three cases reported in the *Washington State Bar News* in which attorneys were censured and/or reprimanded for similar misconduct are analogous: *In re Disciplinary Proceeding Against Werthan* (56 *Wash. St. Bar News*, Feb. 2002, at 50); *In re Disciplinary Proceeding Against Salazar* (56 *Wash. St. Bar News*, Feb.

2002, at 51); and *In re Disciplinary Proceeding Against George* (55 *Wash. St. Bar News*, Dec. 2001, at 48). We are unpersuaded. In general, *Bar News* descriptions do not offer the factual support and record that published decisions of this court do. In any event, the *Bar News* descriptions cited by Lopez are distinguishable. *Werthan* is inapposite because it involved a stipulation. "A stipulation is analogous to a plea agreement, and thus irrelevant in determining proportionality of attorney discipline." *Anschell* II, 149 Wn.2d at 518. *Salazar* and *George* are also unpersuasive because neither involved the willful violation of a court order. Both cases involved conduct that the hearing officer deemed merely "negligent," and both had additional mitigating factors.

¶65 "This court has consistently imposed suspension when attorneys neglect matters entrusted to them." *Juarez*, 143 Wn.2d at 886. Lopez exhibited lack of diligence when he failed to file the opening brief by three separate deadlines spanning approximately 14 months prior to transferring Guzman's file to Salazar. For this, the Board recommended a 60-day suspension. Exacerbating Lopez's lack of diligence is his failure to take reasonably practicable steps to protect his client's interests upon termination of his representation in violation of RPC 1.15(d) and his willful disobedience of a court order subjecting him to discipline under former RLD 1.1(b).[11]

¶66 The second *Noble* factor retained in *Kuvara* considers the extent of agreement among the Board members. *Kuvara*, 149 Wn.2d at 259. Because the Board was almost unanimous in recommending the 60-day suspen-

---

[11] Given the circumstances of this case, the 60-day suspension was lenient. Suspensions should generally fall within the range of six months to three years. ABA *Standards* std. 2.3. "The minimum suspension is appropriate in cases where there are both no aggravating factors and at least some mitigating factors, or when the mitigating factors clearly outweigh the aggravating factors." *In re Disciplinary Proceeding Against Cohen*, 149 Wn.2d 323, 339, 67 P.3d 1086 (2003). Such was the case here. Because the hearing officer explicitly stated that "the aggravating factors outweigh or neutralize the mitigating factors," he could have justifiably imposed a suspension three times greater than the one actually imposed and, even then, only been in the general minimum range for lack of diligence. FFCLR at 7.

sion, this court is reluctant to reject its recommendation. *Cohen* II, 150 Wn.2d at 763. Further, the lack of unanimity does not greatly affect our consideration because the dissent did not specifically address the severity of the sanction; it instead focused on whether the WSBA proved the alleged counts of misconduct. *See Brothers*, 149 Wn.2d at 587.

¶67 Neither of the two remaining *Noble* factors, proportionality or unanimity, convinces us that we should impose a different sanction.

## V. CONCLUSION

¶68 We hold that Lopez violated his ethical duties by failing to file an opening brief before three deadlines, by failing to take reasonably practicable steps to protect his client's interests upon termination of his representation, and by failing to timely and adequately respond to the Ninth Circuit's order to show cause. Our review of Lopez's ethical violations in light of his mental state, the injury caused to his client and the legal system, as well as the applicable aggravating and mitigating factors convinces us that the Board appropriately recommended a 60-day suspension into which the Board merged the two censures. We order Lopez suspended from the practice of law for 60 days.

ALEXANDER, C.J.; BRIDGE and CHAMBERS, JJ.; and IRELAND, J. Pro Tem., concur.

¶69 MADSEN, J. (dissenting) — I agree with the majority that the Washington State Bar Association (WSBA) proved all three counts of misconduct by a clear preponderance of the evidence. I dissent, however, because I disagree with the majority's sanction.

Count I

¶70 Mr. Lopez violated RPC 1.3 and RPC 3.2 when he missed briefing deadlines in an appeal to the Ninth Circuit. I agree with Justice Owens that Mr. Lopez was negligent in these failures. Negligence is defined as the "failure of a

lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." AMERICAN BAR ASSOCIATION, STANDARDS FOR IMPOSING LAWYER SANCTIONS 7 (1991 & Supp. 1992). Here, Mr. Lopez missed three briefing deadlines. He did request two extensions, which the Ninth Circuit granted. However, the court warned Lopez that another failure "may result in the court relieving counsel in this appeal and may subject counsel to the imposition of monetary sanctions." Ex. 2f. As to the third deadline, Mr. Lopez failed to request another extension and he failed to inform the court that he no longer represented Mr. Guzman in the appeal. He did, though, urge new counsel, Mr. Salazar, to notify the Ninth Circuit that he had been retained and to request an additional extension. In my view, Mr. Lopez's actions reflect a negligent mental state.

¶71 I also agree with Justice Owens that Mr. Lopez's negligence caused little or no actual or potential injury to his client, Mr. Guzman, for the reasons articulated in her dissent. Thus, I agree that *American Bar Association* standard 4.44, at 33 applies. However, I also believe that *standard* 6.23 applies because Mr. Lopez failed to "comply with a court order or rule, [which] cause[d] . . . interference or potential interference with a legal proceeding" when he failed to follow the rules for filing briefs on his client's behalf. *standard* 6.23, at 42. As the majority notes, the Ninth Circuit was put to considerable effort to gain Mr. Lopez's compliance with its rules, and was ultimately compelled to refer Mr. Lopez to the WSBA for discipline.[12]

¶72 Accordingly, applying the relevant standards, I believe the presumptive sanction for Count I should be a reprimand.

---

[12] While standard 4.44 appropriately applies insofar as Count I reflects a violation of RPC 1.3, standard 6.23 appropriately applies to the also included violation of RPC 3.2. Given this court's plenary power in matters of lawyer discipline, *In re Disciplinary Proceeding Against Whitt*, 149 Wn.2d 707, 716, 72 P.3d 173 (2003), the court may apply a standard not relied upon by the hearing examiner or the Disciplinary Board.

Count II

¶73 Mr. Lopez violated RPC 1.15(d) when he failed to request an extension or to notify the Ninth Circuit that he was no longer representing Mr. Guzman. Guzman discharged Mr. Lopez and retained Mr. Salazar after Mr. Lopez had missed the third briefing deadline set by the Ninth Circuit. Although Mr. Lopez did inform new counsel that he had missed the September deadline and urged new counsel to seek an extension, Mr. Lopez failed to inform the Ninth Circuit that he no longer represented Mr. Guzman. Consequently, the Ninth Circuit issued an order to show cause, requiring Mr. Guzman to notify the court that he had retained new counsel, needed appointment of public counsel, or intended to proceed pro se. The order threatened to dismiss Guzman's appeal. It also ordered Mr. Lopez, as "appellant's retained counsel" to show cause why he should not be sanctioned. Ex. 2g. By failing to request an extension and/or notify the court of his withdrawal, Mr. Lopez failed to "take steps to the extent reasonably practicable to protect [his] client's interests" in violation of RPC 1.15(d). I agree with the majority that Mr. Lopez's conduct was negligent.

¶74 As to the appropriate sanction, I believe that standards 4.4 and 7.3 fit the circumstances here. If Mr. Lopez had notified the court that he no longer represented Mr. Guzman or filed a motion for an extension of time prior to transferring Mr. Guzman's case, or both, perhaps the court would not have found it necessary to issue a show cause order with its threat of dismissal. Nevertheless, Mr. Guzman had retained new counsel, who then bore the major responsibility for notifying the court of his appearance and for filing the appellate brief. Although the injury or potential for injury to Mr. Guzman due to Mr. Lopez's negligence was minimal, Mr. Lopez's conduct caused considerable inconvenience to the court.

¶75 Accordingly, the presumptive sanction for Count II should be a reprimand.

## Count III

¶76 Mr. Lopez violated former RLD 1.1(b) (1994) when he failed to comply with the Ninth Circuit's show cause order. In finding of fact 17, the hearing examiner found that Mr. Lopez had no reason to believe that his staff member's phone call to the court shortly after receiving the show cause order resolved the matter. Additionally, the letter Mr. Lopez sent to the court in response to the order was sent beyond the 14 days required by the order. The majority concludes that Mr. Lopez knowingly violated former RLD 1.1(b) and finds that standard 6.22, at 41, which provides for suspension, describes the correct presumptive sanction. I disagree.

¶77 On September 25, 1998, Mr. Salazar informed Mr. Lopez that he had been retained to represent Mr. Guzman. The show cause order was not issued until March 2000. At that point, Mr. Lopez had already transferred Guzman's file to new counsel, had alerted new counsel of the need to file an extension motion, and had recommended to new counsel that he notify the court that he would be taking over representation. Although Lopez did not do all that he should have to respond to the order, in light of the circumstances, his failure was negligent.

¶78 Justice Owens says, though, that a violation of former RLD 1.1(b) requires a finding that a lawyer acted willfully, and therefore intentionally. This is not so. Former RLD 1.1(b) subjects a lawyer to discipline for "[w]illful disobedience or violation of a court order directing him or her to do or cease doing an act which he or she ought in good faith to do or forbear." The rule is framed in the disjunctive, thus, one may be disciplined for "willful disobedience . . . of a court order" or for "violation of a court order." Moreover, standard 6.2 provides for different sanctions when a lawyer violates a court order or rule, depending on the lawyers mental state. For example, standard 6.23 suggests that a

"[r]eprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule."[13]

¶79 Here, I believe that a reprimand is the correct presumptive sanction. Although there was little or no actual or potential injury to Mr. Guzman and little or no actual or potential interference with a legal proceeding, Mr. Lopez's failings were not "an isolated instance of negligence in complying with a court order or rule" such that an admonition pursuant to standard 6.24 at 42 would be appropriate.

¶80 The aggravating and mitigating factors in this case do not suggest a departure from the presumptive sanction.

¶81 Accordingly, I believe that a reprimand is the appropriate sanction for the conduct in this case.

¶82 OWENS, J. (dissenting) — Because I conclude that the Washington State Bar Association (WSBA) failed to prove by a clear preponderance of the evidence two of the three counts alleged against Mr. Lopez and because I disagree with the sanction analysis of the one proven violation, I must respectfully dissent. I would hold that Mr. Lopez's delay in filing Mr. Guzman's appellate brief was negligent, that the manner of his withdrawal did not violate Rules of Professional Conduct (RPC) 1.15(d), and that he did not "willfully" violate the United States Court of Appeals for the

---

[13] Justice Owens also states that I agree that the WSBA proved Lopez's "willful disobedience" of the show cause order. Dissent (Owens, J.) at 612-13. My agreement is not a concession but a recognition that the hearing examiner framed his finding that Lopez violated former RLD 1.1(b) in the same disjunctive language of the rule. *See* conclusion of law 3, board record at 103. Justice Owens additionally misinterprets my analysis by stating that I have rewritten the rule to say "[w]illful disobedience or *negligent* violation of a court order." Dissent (Owens, J.) at 612. I have not. Instead, I have simply recognized that the rule encompasses violation of a court order with any of the relevant mental states: intent, knowledge, or negligence. I strongly disagree with Justice Owens' belief that in order to charge a negligent violation of a court order, the WSBA would have had to charge a violation of RPC 3.2. Dissent (Owens, J.) at 612. Justice Owens bases this conclusion on a cross-reference table that does not relate to this state's former Rules for Lawyer Discipline at all. Moreover, RPC 3.2 concerns expediting litigation, while former RLD 1.1(b) more precisely referred to violation of a court order, and the WSBA was entitled to charge under the more specific rule. Finally, I find strained Justice Owens' complaint that I have failed to follow some rule of adjective-parallelism. Dissent (Owens, J.) at 612.

Ninth Circuit's show cause order. Based on the record before the Disciplinary Board, the appropriate sanction for Mr. Lopez's delay in filing the brief is an admonition.

¶83 At the hearing, Mr. Lopez testified that Mr. Guzman had retained him for the limited purpose of filing a notice of appeal. Mr. Lopez stated that he had periodically explained to Mr. Guzman that three options were available: authorizing Mr. Lopez to go forward, retaining new counsel, or having the court appoint counsel for him. The hearing officer did not express disbelief in Mr. Lopez's explanation but simply found that Mr. Lopez's limited scope defense "was *insufficient* to relieve him of the duty to file the brief." Finding of Fact (FF) 21, Record Before the Disciplinary Board (BR) at 102 (emphasis added). I agree with the legal conclusion that, even accepting Mr. Lopez's explanation as true, his failure to clarify the nebulous attorney-client relationship left him with the responsibility for filing the brief. The record establishes that Mr. Lopez missed the briefing deadline by six months, four months, and three weeks. His violation of RPC 1.3 and 3.2 was established by a clear preponderance of the evidence.

¶84 I disagree, however, with the majority's conclusion that suspension is the presumptive sanction for Mr. Lopez's violation of RPC 1.3 and 3.2. To determine the presumptive sanction for the violation charged in count I, the hearing officer turned to the American Bar Association's *Standards for Imposing Lawyer Sanctions* std. 4.4 *Lack of Diligence* (1991 & Supp. 1992) (ABA *Standards*), which includes, along with subsection 4.41 on disbarment, the following subsections on suspension, reprimand, and admonition:

4.42 Suspension is generally appropriate when:
- (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
- (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

4.43 Reprimand is generally appropriate when a lawyer is *negligent* and does not act with reasonable diligence in

representing a client, and *causes injury or potential injury* to a client.

4.44 Admonition is generally appropriate when a lawyer is *negligent* and does not act with reasonable diligence in representing a client, and causes *little or no actual or potential injury* to a client.

(Emphasis added.) As the above standards demonstrate, the severity of the sanction for Mr. Lopez's lack of diligence is dependent upon, first, his "mental state"—whether he acted "intentionally, knowingly, or negligently"—and, second, "the extent of the actual or potential injury caused by the . . . misconduct." ABA STANDARDS at 5 (II. Theoretical Framework), std. 3.0; *In re Disciplinary Proceeding Against Johnson*, 114 Wn.2d 737, 745, 790 P.2d 1227 (1990) (requiring application of "analytical framework" of ABA *Standards*).

¶85 The majority accepts that suspension is warranted in this case because Mr. Lopez acted "knowingly" and "cause[d] injury or potential injury" to Mr. Guzman. ABA STANDARDS std. 4.42(a). I find the majority's conclusions unconvincing. I would hold that, when Mr. Lopez failed to clarify his client's wishes or otherwise take action to move the appeal forward, his mental state was "negligence": " 'Negligence' is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." ABA STANDARDS, *Definitions* at 7. The Ninth Circuit's leniency in granting extensions (in one instance, the court granted a more generous extension than Mr. Lopez had even requested) could cast some doubt on whether a "reasonable lawyer" would, in fact, have perceived that failing to file the brief created a "substantial risk" of any adverse consequences for the lawyer or his client. The most that can be said (and I believe it is sufficient to establish a mental state of "negligence") is that Mr. Lopez "fail[ed] . . . to heed a substantial risk" that he would receive another default notice from the Ninth Circuit, a consequence that no

reasonable attorney would require before filing the opening brief. Concluding that Mr. Lopez's mental state was "negligence," I would find standard 4.42 inapplicable.

¶86 Just as the factual findings fail to establish a mental state other than "negligence" for the count I violation, the record is inadequate to sustain a finding that the delay caused "injury or potential injury to [the] client"—the finding necessary for the presumptive sanction of suspension under standard 4.42. According to finding of fact 22, which is more accurately defined as a mixed finding of fact and conclusion of law, "Mr. Lopez's conduct caused actual and potential injury to Mr. Guzman, in that his appeal was delayed and subjected to potential dismissal." BR at 102. But this finding does no more than make the circular statement that the delay caused actual injury because it caused a delay. The majority has pointed to no findings establishing that the delay actually injured Mr. Guzman, whose aim on appeal was a 10-month reduction in his 70-month sentence. In fact, in the only other finding that addresses this question, the hearing officer stated that "[t]here [was] *no* eviden[ce] that the delay caused by Mr. Lopez affected the outcome of the appeal." FF 23, BR at 102 (emphasis added). Thus, the actual injury caused by the delay remains a matter of speculation; because Mr. Guzman did not initiate the grievance against Mr. Lopez and because the WSBA's investigation did not include any contact with Mr. Guzman, the record is devoid of any evidence that the delay caused actual injury to the client. *Cf. In re Disciplinary Proceeding Against Fraser*, 83 Wn.2d 884, 523 P.2d 921 (1974), *overruled on other grounds by In re Disciplinary Proceeding Against Boelter*, 139 Wn.2d 81, 985 P.2d 328 (1999) (involving four grievances filed by anxious, frustrated clients).

¶87 Similarly, as for any "potential injury" arising from Mr. Lopez's 14-month delay in filing the brief, the hearing officer found that the delay "subjected [Mr. Guzman's appeal] to potential dismissal." FF 22, BR at 102. But the Ninth Circuit's default orders of January 23 and August 13,

1998, do not threaten dismissal of Mr. Guzman's appeal; rather, the "default" at issue in the orders is Mr. Lopez's representation, not Mr. Guzman's appeal. Exs. 2a, 2d. The only orders from the Ninth Circuit that mentioned possible dismissal of the appeal were those sent 18 months *after* Mr. Lopez transferred the matter to Mr. Salazar; those orders—which Mr. Guzman plainly would not have received but for Mr. Salazar's year and a half of neglect—cautioned Mr. Guzman that *his* failure to retain new counsel or request court appointed counsel could result in dismissal of the appeal. Exs. 2g, 2h. At the time Mr. Guzman fired Mr. Lopez, the Ninth Circuit had never threatened that Mr. Lopez's delay was cause for potential dismissal. The majority errs in upholding the hearing officer's determination that "Mr. Lopez's conduct caused actual and potential injury to Mr. Guzman, in that his appeal was delayed and subjected to potential dismissal." FF 22, BR at 102. In light of the WSBA's failure to demonstrate that Mr. Lopez's delay actually or potentially injured Mr. Guzman, the only supportable conclusion is that Mr. Lopez's delay caused "little or no actual or potential injury." Mr. Lopez's misconduct therefore warrants an admonition, as described in standard 4.44.[14]

---

[14] Although Justice Madsen agrees that standard 4.44 applies, she "also believe[s] that *Standard* 6.23 applies" and, on that basis, defines the presumptive sanction for count I as a reprimand. Dissent (Madsen, J.) at 598. But *neither the* hearing officer nor the majority applied standard 6.23 to the count I violation of RPC 1.3; rather, both set forth collectively the three standards providing the presumptive sanctions for the three counts. *See* BR at 103-04 (defining the applicable standards as 4.42, 6.22, and 7.3); Majority at 592-93. Reference to the ABA *Standards* shows that the standard applicable to RPC 1.3 is standard 4.4. ABA STANDARDS at 57. It is likewise apparent that the hearing officer identified standard 6.22 as the one applicable to the RLD 1.1(b) violation, *see id.* at 13, 41-42 ("6.2 Abuse of the Legal Process" by "violating a court order or rule"), and that he applied standard 7.3 to RPC 1.15(d) (Model Rule of Professional Conduct 1.16). *See id.* at 57. Standard 6.2 expressly pertains to "Violations of Duties Owed to the Legal System," *id.* at 12-14, 40, whereas standard 4.44 applies to "Violations of Duties Owed to Clients," which encompasses RPC 1.3 on diligence. *Id.* at 9-11, 57. Even if standard 6.23 were to apply to an RPC 1.3 violation, it should not apply here to increase the presumptive sanction to a reprimand since Justice Madsen concluded that "Mr. Lopez's negligence caused little or no actual or potential injury to his client." Dissent (Madsen, J.) at 598; ABA STANDARDS std. 6.24 (defining admonition as presumptive sanction for conduct that "causes little or no actual or potential injury to a party").

¶88 As to count II, I would hold that the WSBA failed to prove the violation by a clear preponderance of the evidence. The WSBA charged Mr. Lopez with violating RPC 1.15(d) "[b]y failing to take reasonably practicable steps to protect his client's interests upon termination of the representation." BR at 5. RPC 1.15(d), on its face, protects a client whose attorney has decided to withdraw from a case, and it targets conduct that would frustrate a client's efforts to move forward with new counsel:

> A lawyer shall take steps to the extent reasonably practicable to protect a client's interests, *such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.* The lawyer may retain papers relating to the client to the extent permitted by other law.

(Emphasis added.) Rather than suggesting that Mr. Lopez in any way delayed or complicated Mr. Guzman's new relationship with successor counsel, Mr. Salazar, the record shows that Mr. Lopez took immediate action to assist the transition: Mr. Salazar wrote Mr. Lopez on Friday, and on Tuesday, Mr. Lopez responded by delivering Mr. Guzman's file to Mr. Salazar, apprising him of the missed briefing deadline and directing him to contact the Ninth Circuit immediately to tell the court that he had been retained. *See* FF 7, BR at 101; Ex. 5. Clearly, Mr. Lopez's response fully protected Mr. Guzman's desire to have Mr. Salazar, not Mr. Lopez, carry his case forward.

¶89 The WSBA has identified no commentary or case law suggesting that RPC 1.15(d) imposes on a terminated attorney the duty to ensure that the client's chosen substitute meets his or her own ethical duties to the client. By agreeing with the WSBA on count II, the majority permits an ill-advised extension of a terminated attorney's duties under RPC 1.15(d). Under the majority opinion, an attorney must now guard against a violation of RPC 1.15(d) by monitoring substitute counsel's attention to all matters left

pending at the time of termination. This unreasonable burden is contrary to the aims of RPC 1.15(d).

¶90 In a second expansion of a terminated attorney's duties under RPC 1.15(d), the majority bases Mr. Lopez's alleged violation of the rule on his failure to file a notice of withdrawal. This extension of RPC 1.15(d) is flawed in two significant respects. First, no applicable court rule *required* Mr. Lopez to inform the court that he was no longer representing Mr. Guzman. Had the Ninth Circuit wanted to require a terminated or withdrawing attorney to file a notice of withdrawal in the present circumstances, the Ninth Circuit could have written such a rule. For example, under Ninth Circuit Rule of Appellate Procedure 4-1(c), where trial counsel has previously filed a notice of appeal under 4-1(a) to protect a criminal defendant's right to appeal, counsel is permitted to withdraw by filing a motion "with the Clerk of this court *within twenty-one (21) days* after the filing of the notice of appeal." (Emphasis added.) While rule 4-1(c) thus requires the filing of a notice of appeal in a particular circumstance, no Ninth Circuit rule requires that an attorney who is *retained* to file a notice of appeal must file a notice of withdrawal when his client, 17 months later, retains substitute counsel.

¶91 Second, even if such a court rule had existed, Mr. Lopez's noncompliance would not have been a violation of RPC 1.15(d). In fact, Washington's RPC 1.15 *specifically* omits from the ABA Model Rule any such requirement. ABA Model Rule 1.16(c) (Washington's RPC 1.15(c)) states as follows:

> *A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation.* When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

CENTER FOR PROFESSIONAL RESPONSIBILITY, AMERICAN BAR ASSOCIATION, ANNOTATED MODEL RULES OF PROFESSIONAL CONDUCT 259 (5th ed. 2003) (emphasis added). We have declined to adopt the first sentence of the ABA Model Rule, thus pointedly

eliminating from RPC 1.15 an attorney's duty to comply with a court rule requiring notice of withdrawal. To conclude that Mr. Lopez violated RPC 1.15(d) by failing to file a notice of withdrawal, this court would, in effect, have to draft a rule for the Ninth Circuit and then add the sentence rejected from RPC 1.15(c) to 1.15(d). The majority opinion has implicitly taken both steps.

¶92 Additionally, a prior decision within the Ninth Circuit is instructive. In *Barry v. Ashley Anderson, P.C.*, 718 F. Supp. 1492 (D. Colo. 1989), Barry retained attorney Francis in November 1981; Barry replaced him with attorney Anderson approximately 11 months later, and Barry's file was transferred to Anderson. Francis filed no notice of withdrawal, and Anderson filed no notice of appearance. A year later, in August 1983, the trial court sent a notice to Francis that the case "would be dismissed on October 3, 1983 for failure to prosecute unless cause was shown otherwise." *Id.* at 1493-94. One week after receiving the notice, Francis "verbally notified Anderson of the court's dismissal notice and the next day sent Anderson a confirmation of the conversation and a copy of the notice." *Id.* at 1494. Anderson failed to act, the case was dismissed, and the expiration of the statute of limitations foreclosed Barry's pursuit of his claims. The *Barry* court concluded as a matter of law that, even where a local rule of civil procedure required formal withdrawal, "Francis satisfied any . . . residual duty to Barry [under the rule] for failure to formally withdraw as Barry's counsel because the uncontroverted evidence demonstrate[d] that when Francis received the court's notice of failure to prosecute in August 1983, he informed Barry's attorney, Anderson, of it, verbally and by letter." *Id.* at 1494. In *Lockhart v. Greive*, 66 Wn. App. 735, 834 P.2d 64 (1992), the Court of Appeals, Division One, cited *Barry* in holding that, even where an attorney was withdrawing from representation (as opposed to being terminated), his failure to withdraw pursuant to CR 71(d) made no "difference" since "it was clearly understood by all persons involved that [the client] was being represented by [newly

retained counsel]." *Id.* at 741-42. Thus, in both *Barry* and *Lockhart*, where local rules prescribed procedures for formally withdrawing from representation, the courts looked not at strict compliance with the formal procedures but at the terminated or withdrawing attorney's cooperation with his former client and the client's subsequent counsel.

¶93 In light of these cases, it should not be said in the present case that Mr. Lopez somehow breached a duty to Mr. Guzman under RPC 1.15(d). Mr. Lopez, unlike Barry, breached no court rule requiring a formal notice of withdrawal, and he facilitated the transition of Mr. Guzman's case to Mr. Salazar in the same way that the attorneys in *Barry* and *Lockhart* allowed for the transfer of their clients' cases. Given that the common law standard of care in a malpractice action is generally higher than "the minimum level of conduct" represented by the RPC, *see* RPC "Preliminary Statement," it seems incongruous that Barry was deemed nonnegligent in a malpractice action, while Mr. Lopez's virtually identical conduct was found to be negligent under RPC 1.15(d): "In failing to ensure that Mr. Salazar entered a notice of appearance or substitution, *or to otherwise take steps to withdraw from the matter,* Mr. Lopez *acted negligently.*" Conclusion of Law (CL) 5, BR at 103 (emphasis added).

¶94 In sum, just as RPC 1.15(d) does not hint that a terminated or withdrawing attorney must find new counsel for his client, the rule does not suggest that a terminated or withdrawing attorney must ensure that his or her successor files a notice of appearance and takes care of pending matters. Nor does the rule impose on the terminated or withdrawing attorney a duty to file a notice of withdrawal. To the contrary, even where a court rule requires the filing of a notice of withdrawal, RPC 1.15 does not incorporate the requirement found in ABA Model Rule 1.16(c) that an attorney must comply with such a rule. I therefore conclude that the WSBA has failed to prove that Mr. Lopez's transfer of the case to Mr. Salazar violated RPC 1.15(d). Count II should be dismissed.

¶95 In count III, the WSBA asserted that Mr. Lopez's response to the Ninth Circuit's March 10, 2000, show cause order was a violation of former Rules for Lawyer Discipline (RLD) 1.1(b): *"Willful* disobedience or violation of a court order directing him or her to do or cease doing an act which he or she ought in good faith to do or forbear." (Emphasis added.)[15] Critical to this charge is the language of the order:

> Alfred R. Lopez, Esq., shall show cause *in writing* why he should not be sanctioned in an amount not less than $500.00 for failing to comply with this court's rules and orders. Failure to file a timely response *or provide an adequate explanation* may result in the imposition of sanctions without further notice.

Ex. 2g (emphasis added). Mr. Lopez testified that, because he had heard nothing from Mr. Salazar, Mr. Guzman, or the Ninth Circuit for 18 months, he assumed that the court's show cause order was the product of a clerical error. It is undisputed that, at Mr. Lopez's direction, his legal assistant phoned the Ninth Circuit. Mr. Lopez believed that the phone call would correct the clerical error and that by calling he was "provid[ing] an adequate explanation," the order's alternative to filing a written response. Two months later, Mr. Lopez received a copy of the Ninth Circuit's May 8, 2000, order, which revealed that the court continued to believe that Mr. Lopez was representing Mr. Guzman. Mr. Lopez sent the court a letter, dated May 16, 2000, explaining that he had transferred the matter to Mr. Salazar; the letter indicates that copies were sent to Mr. Guzman's sister and Mr. Salazar.

---

[15] The RLDs were superseded by the Rules for Enforcement of Lawyer Conduct (ELC), effective October 1, 2002. Likewise effective on that date, the text of former RLD 1.1(b) was adopted virtually verbatim as RPC 8.4(j). As provided in ELC 16.1, the ELCs govern "any pending matter or investigation that has not yet been ordered to hearing" and "will apply to other pending matters except as would not be feasible or would work an injustice." To resolve any disagreement as to the rules governing "other pending matters," "[t]he hearing officer or panel chair assigned to hear a matter, or the Chair in a matter pending before the Board, may rule on the appropriate procedure with a view to insuring a fair and orderly proceeding." *Id.* In the present case, which was ordered to hearing prior to October 1, 2002, the RLDs were applied in all proceedings.

¶96 On these facts, the hearing officer concluded that Mr. Lopez violated former RLD 1.1(b), "[w]illful disobedience or violation of a court order." *See* CL 3, BR at 103. But such a conclusion does not flow from the findings. The adjective "willful" is defined as "done deliberately: not accidental or without purpose: *intentional*, self-determined." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 2617 (2002) (emphasis added); *see also* BLACK'S LAW DICTIONARY 1630 (8th ed. 2004) (defining "willful" as "[v]oluntary and *intentional*" (emphasis added)). Thus, by its plain language, the rule under which Mr. Lopez was charged requires *intentional* conduct. None of the findings of fact suggests that Mr. Lopez's response was an act of deliberate, *intentional* disobedience; the evidence shows that his intent was not to disobey the order, but to correct an apparent error.

¶97 More significantly, the hearing officer's conclusion of law that Mr. Lopez had "willfully disobeyed" the show cause order is contradicted by a subsequent conclusion of law: "By failing to comply with the Ninth Circuit's March 10, 2000 order to show cause, Mr. Lopez acted *knowingly*." CL 6, BR at 103 (emphasis added). By determining that Mr. Lopez's mental state was "knowledge," the hearing officer necessarily declined to conclude that Mr. Lopez had acted "intentionally":

> "Intent" is the conscious objective or purpose to accomplish a particular result.
>
> "Knowledge" is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.

ABA STANDARDS, *Definitions* at 7. Thus, by the hearing officer's own conclusion of law, Mr. Lopez did not respond to the show cause order with "intent"—that is, with "the conscious objective or purpose to" disobey it. The hearing officer's conclusion that Mr. Lopez acted, not intentionally, but knowingly undermines the WSBA's charge in count III of "willful" conduct. Because the factual findings do not support the conclusion that Mr. Lopez "willfully" disobeyed

the show cause order and because, in any case, the hearing officer explicitly found that Mr. Lopez did not act intentionally, the majority manifestly errs in claiming that the WSBA proved by a clear preponderance of evidence the violation alleged in count III.

¶98 The plain meaning of former RLD 1.1(b) is disregarded to an even greater degree in Justice Madsen's dissent. Although Justice Madsen agrees with the majority that the WSBA proved Mr. Lopez's "willful disobedience" of the show cause order, she contends that his mental state was not "knowledge" but "negligence," a contention that leads to the logically indefensible conclusion that Mr. Lopez *negligently willfully* disobeyed the court order. *See* dissent (Madsen, J.) at 600; *see also* BLACK'S LAW DICTIONARY 1630 (noting that " 'willfully' " committing a crime " 'means only intentionally or purposely as distinguished from accidentally or negligently' ") (quoting ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 875-76 (3d ed. 1982)). Justice Madsen explains that, given the word "or" in the phrase "[w]illful disobedience or violation of a court order," the adjective "willful" applies only to the first noun, "disobedience," yet curiously she permits the adjectival phrase "of a court order" to modify both nouns. Dissent (Madsen, J.) at 600-01. Plainly, the preceding adjective "willful" modifies both "disobedience" and "violation" in just the same way that, in the phrase "court order or rule," *see* dissent (Madsen, J.) at 600-01 or ABA *Standards* at 41, the word "court" modifies both "order" and "rule." Moreover, Justice Madsen's grammatical analysis eliminates the phrase "[w]illful . . . violation of a court order," a very common statutory phrase,[16] and effectively rewrites former RLD 1.1(b) (current RPC 8.4(j)) to read "[w]illful disobedience or *negligent* violation of a court order." Finally, Justice Madsen suggests that standard 6.23 applies, making a reprimand the presumptive sanction for the RLD 1.1(b) violation. Dissent (Madsen, J.) at 600-01. But if the WSBA had wanted to charge Mr. Lopez with the *negligent* violation of the Ninth

---

[16] *See, e.g.*, RCW 9A.46.080, 10.99.040(4)(a), .050(2)(a), 26.44.063(8), .150(2).

Circuit's March 10 show cause order, rather than the *intentional* violation of the order, it would have had to charge the misconduct as a separate violation of RPC 3.2. *See* STANDARDS at 58. That " 'isolated instance of negligence in complying with' " the March 10 show cause order, which caused (as Justice Madsen agrees, *see* dissent (Madsen, J.) at 601) "little or no actual or potential injury to [a party]," would have warranted an admonition under standard 6.24, not a reprimand under 6.23. *Id.* at 42.

¶99 In sum, I cannot subscribe to the view that, on counts II and III, the WSBA met its burden of proof. The majority opinion permits the WSBA not only to graft new requirements onto RPC 1.15(d) but also to satisfy former RLD 1.1(b)'s requirement of intentional conduct without proving intent. I would hold that an admonition is the presumptive sanction for the one proved violation (the violation of RPC 1.3 and/or 3.2 alleged in count I) and that the aggravating and mitigating factors identified by the hearing officer and applicable to the count I violation warrant no deviation.

¶100 Nor do I see anything in the two remaining *Noble*[17] factors of proportionality and board unanimity that would compel an enhancement of the presumptive sanction. *In re Disciplinary Proceeding Against Kuvara*, 149 Wn.2d 237, 256-59, 66 P.3d 1057 (2003). Indeed, if proportionality is a concern, this court need look no further than the varying treatment Mr. Lopez and Mr. Salazar have received from the WSBA in this case. Mr. Salazar became Mr. Guzman's attorney in late September 1998 and did not file a notice of appearance until exactly 20 months later, and he did so then only because Mr. Lopez had forwarded him a copy of his May 16, 2000, letter to the Ninth Circuit. When Mr. Salazar filed his notice of appearance on May 25, 2000, his accompanying letter gave no indication that he had, in fact, taken the case from Mr. Lopez 20 months prior. The inescapable truth of the matter is that, had Mr. Salazar

---

[17] *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 667 P.2d 608 (1983).

filed his notice of substitution when he took possession of the file, the Ninth Circuit would have filed no show cause order, imposed no sanctions on Mr. Lopez, and registered no complaint with the WSBA; the WSBA would have initiated no grievance; no review committee would have spent time on this matter; no hearing would have been held; no Disciplinary Board review would have ensued; no lengthy majority opinion would have been written; and Mr. Lopez would not now be looking at a 60-day suspension from the practice of law. At oral argument, when asked whether the WSBA had disciplined Mr. Salazar, counsel for the WSBA acknowledged that "[t]here is no public discipline or public proceeding relating to Mr. Salazar arising from this case." Wash. Supreme Ct. oral argument, *In re Disciplinary Proceeding Against Lopez*, No. 17502-1 (Nov. 18, 2003), *audio recording by* TVW, Washington State's Public Affairs Network, available at http://www.tvw.org. *See* ELC 3.1(b)(11) (identifying as public disciplinary information "any sanction or admonition imposed on a respondent"). This is a curious fact that Mr. Lopez may ruefully ponder as he serves his two-month suspension.

C. JOHNSON and SANDERS, JJ., concur with OWENS, J.